IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | SA-19-MJ-01450-ESC |
| vs. | § § § | |
| (1) DAWN M. SHEFFIELD, | § § | |
| *Defendant.* | § § | |

**ORDER**

Before the Court in the above-styled and numbered cause of action is Defendant's Motion to Dismiss and Motion for Acquittal [#30]. Having considered the Government's Amended Response to Defense Motion to Dismiss and Motion for Acquittal [#32], Defendant's Reply [#33], the applicable legal authorities, and the entire record on this matter, the Court finds that Defendant failed to establish as a matter of law that the debit card and funds allegedly stolen by Defendant were not property that belonged to the United States. Accordingly, Defendant's Motion to Dismiss and Motion for Acquittal is **DENIED**.

**I. Background**

Defendant is charged with two counts of theft of government property under 18 U.S.C. § 641. (Infor. [#1], at 1.) Defendant is accused of activating a debit card preloaded with federal funds and issued by the United States for an international military student and using it to obtain government funds for Defendant's personal use. On October 9, 2020, this Court held a status conference where the parties agreed to trial by submission. (Order [#29], at 1.) Thus, if the briefing and undisputed evidence establish as a matter of law that the debit card and funds were not property that belonged to the United States, Defendant will be acquitted.

Defendant worked as a Field Studies Program Manager for Air Force Security Assistance and Training ("AFSAT") at Randolph Air Force Base from January 2012 until March 2020. (Def. Mo. [#30], at 1.) Specifically, Defendant worked in the International Military Student Office. (*Id.*) When an international military student comes to the United States for Foreign Military Sales (FMS) training, the student's home county supplies funds to the United States government to cover the student's expenses while in the United States. (*Id.* at 2.) The government creates an account for the student and holds and disburses funds for the benefit of the student. (*Id.*) In March 2018, an international military student from Saudi Arabia was supposed to attend FMS training in Cincinnati. (International Travel Order [#30-2], at 1.) Saudi Arabia generated an Invitational Travel Order (ITO) for him and supplied funds to a United States government account to hold and supply to the student. (Def. Mo. [#30], at 2–3.) The Defense Finance Accounting Service loaded $2,850.00 onto a debit card for the student, paid out of this account. (Travel Voucher Summary [#32-1], at 1.) The Saudi Arabian student did not appear for his scheduled training, so he never received the debit card. (Def. Mo. [#30], at 2.) According to protocol, these unused FMS funds should have been returned to the United States government account and ultimately returned to Saudi Arabia. (Agency Manual [#30-1], at 11.) That is not what happened.

Instead, Defendant activated the debit card and used it between July 4, 2019 and July 14, 2019, to withdraw for herself $358.62 in Paris, France; $1,370.80 in San Antonio, Texas; and $1120.58 in Washington state. (Def. Mo. [#30], at 3.) After the Defendant left the employ of the AFSAT, another AFSAT employee detected the discrepancy when she conducted a reconciliation review.

In her motion for acquittal, Defendant does not contest that she activated the debit card and used it to obtain funds; instead, she argues that she should be acquitted because, as a matter of law, neither the debit card nor the funds it enabled her to access were property belonging to the United States.

## II. Analysis

Defendant is charged with violating 18 U.S.C. § 641, and specifically, that she knowingly stole or converted to her use a debit card and funds that belonged to the United States. To establish a violation of Section 641, the Government is required to prove that: (1) the property belonged to the United States and had a value in excess of $1,000; (2) Defendant stole or converted the property for her own use or for the use of another; and (3) Defendant did so knowing the property was not hers and with the intent to deprive the owner of the use or benefit of the property.  *See* 18 U.S.C. § 641; *United States v. Dien Duc Huynh*, 246 F.3d 734, 745 (5th Cir. 2001).

The sole question before the Court is whether the debit card issued for the no-show student that Defendant activated, and its preloaded funds, qualify as property that belonged to the United States.  Defendant argues that the debit card and funds did not belong to the United States because the Government did not have sufficient control over the debit card or funds.  In support of this argument, Defendant emphasizes the lack of reversionary interest that the government retained in the debit card and funds; the fact that the government did not monitor the use of the debit cards once distributed to the international students; and the government's inability to terminate the contracts with the students or cut off funding.  (Def. Mo. [#30], at 4–5.)

In the Fifth Circuit, the pivotal consideration in deciding whether money or funds belong to the United States for purposes of Section 641 is "the supervision and control manifested on the

3

part of the government." *United States v. Smith*, 596 F.2d 662, 664 (5th Cir. 1979). In cases where funds have been appropriated for use in a federal program, and the funds are in transit between their federal source and their intended recipient, the funds remain federal property while in transit if they remain subject to "substantial federal controls." *Id*.

*Smith* involves a scenario where the Fifth Circuit concluded that such control existed. In *Smith*, the defendants were clerical employees of a college who stole federal work-study funds from accounts maintained by the college by drawing checks against the accounts using fictitious names. *Id*. at 663. When the government originally distributed the funds to the college, the college deposited the funds into the college's general revenue account and then transferred them into a special account for the work-study program. *Id.* The defendants stole the funds from these accounts. The defendants pointed out that once funds were distributed to students from these accounts as payment for the students' work at the college, the use of the funds by the students was not monitored by the government. *See id.* at 664. The Fifth Circuit conceded that the funds may cease to be property of the federal government at the point they are distributed to the students. *Id*. ("We may accept the argument that when an outright grant is paid over to the end recipient, utilized, commingled or otherwise loses identity, the money in the grant ceases to be federal."). But the defendants in *Smith* stole the funds from the work-study accounts prior to the funds' distribution to students. Unexpended funds in the work-study account remained the property of the federal Office of Education, and any interest earned on the funds also belonged to the government. *Id*. On these facts, the Fifth Circuit concluded that the funds belonged to the United States.

The instant case involves similar facts to *Smith*, except that here, the government maintained even more control at the time the card and funds were stolen. The United States

4

maintained possession over the debit card and the funds loaded onto it because the card was never delivered to its intended recipient, the no-show international student. A federal agency, AFSAT, loaded the funds onto the debit card. And here, in contrast to the work-study funds in *Smith*, the debit card and the preloaded funds remained in the possession of a government agency up until the point that they were stolen by Defendant. They were stolen by a federal employee, Defendant, who only had access to the card by virtue of her position as an employee of the federal government. As the work study funds in *Smith* may have ceased to be federal property once distributed as payments to students for their work, the debit card and funds may have ceased to be federal property if the card reached the intended beneficiary—the no-show student. But the student never appeared for training and never obtained possession of the debit card, and Defendant stole the card and funds when they were still in full possession and control of the United States.

Defendant argues that the international military students' unrestricted use of the debit cards shows a lack of government control over these debit cards. As the Court already noted, this case may have come out differently if Defendant had stolen the debit card from an international student after the international student had acquired possession of the card, because at that point, the government would have relinquished any control over the card and its preloaded funds. Regardless, that is not the case here; instead, Defendant stole a card that was never transferred to the possession of the student, just as the defendants in *Smith* stole from the work-study accounts before the funds were distributed to students. In addition, another AFSAT employee conducted a reconciliation review, and that is how the stolen credit card was detected, further demonstrating the government's continued control over the debit cards and funds prior to their distribution to students.

The Court turns now to Defendant's principal argument, which is that the debit card and funds are not federal property because any unused FMS funds issued to the no-show student would eventually be returned to Saudi Arabia, not the United States.  Defendant argues that this shows that the United States had no reversionary interest in and thus no control over the debit card.  But in the Fifth Circuit,[1] the Government is not required to prove it suffered actual property loss for purposes of prosecution under Section 641.  *See United States v. Barnes*, 761 F.2d 1026, 1034 (5th Cir. 1985); *see also United States v. Milton*, 8 F.3d 39, 44 (5th Cir. 1993) (rejecting the Ninth Circuit proof-of-loss requirement, and like *Barnes*, holding that proof of the government's loss is not required in a Section 641 prosecution).  Defendant's arguments regarding the reversionary interest are based entirely on case law from outside the Fifth Circuit.  In short, to the extent the United States lacks a reversionary interest in the stolen debit card, that is not dispositive in this Circuit on whether the card and funds were property belonging to the United States.

Also, even in jurisdictions where the reversionary interest is considered an important factor in determining whether the stolen funds belong to the United States, the importance of that factor has been emphasized in situations where the funds that originated with the government pass to private hands.  *Osborne*, 886 F.3d at 612; *United States v. Hall*, 549 F.3d 1033, 1038 (6th Cir. 2008).  But those jurisdictions also recognize that there are other situations where Section 641 applies, including (1) where the funds are clearly the property of the United States, or (2) where the federal government acts as a custodian or bailee over the funds, so that the transitory possession of the funds makes the funds the property of the United States.  *Osborne*, 886 F.3d, at

---

[1] Unlike the Fifth Circuit, other Circuits consider the Government's reversionary interest (or lack thereof) to be an important factor in determining whether property belongs to the United States. *See, e.g., United States v. Littriello,* 866 F.2d 713, 717 (4th Cir. 1989); *United States v. Osborne*, 886 F.3d 604, 612 (6th Cir. 2018); *United States v. Maxwell*, 588 F.2d 568, 572 (7th Cir. 1978).

608–09; *Hall*, 549 F.3d at 1038.  Here, the United States (and specifically, AFSAT) was acting as a bailee or custodian of the funds from Saudi Arabia, exercising control over those funds until they could be properly distributed to Saudi Arabian students.  It was during the period that the United States was acting as custodian that the debit card and funds were stolen.

Given the foregoing, Defendant has failed to prove as a matter of law that the debit card and funds she stole were not property belonging to the United States.

### III. Conclusion

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss and Motion for Acquittal [#30] is **DENIED.**

SIGNED this 29th day of April, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE